WHICH WAS ACCORDINGLY ENTERED.

---

## JOHN B. CONNER, administrator of SAMUEL W. CHAMBERS, deceased,

*vs.*

## McILROY McILVAINE and MARK G. CHAMBERS, administrators of WREXHAM McILVAINE, deceased.

*Kent, March T. 1867.*

The recovery of a judgment against the estate of a deceased executor and its payment do not alone entitle his administrator to contribution from the estate of a deceased co-executor. The latter is liable only for such part of the assets as had been collected during his lifetime and were held unadministered at his decease.

A joint testamentary account passed by two co-executors is *prima facie* evidence that the balance was held jointly, and in the absence of proof to the contrary would render one of them liable for contribution to the other who had paid the balance.

Where one of the co-executors has paid the balance appearing due upon a joint account, it is competent for the other to show that, notwithstanding the form of the account, his co-executor did in fact receive and hold the balance.

A denial by the answer upon information and belief merely, and as to matters not within the personal knowledge of the defendant is not, even when responsive to the bill, entitled to be received as evidence, within the rule requiring two witnesses or one witness with corroborating circumstances to countervail its effect.

When a joint account has been passed by two co-executors in which are included assets jointly held and assets charged to the executors severally and there is no evidence shewing specifically how the several items of the assets charged were disposed of, it is proper to apply what are the most natural and reasonable presumptions with respect to the order of application as between different classes of assets. These presumptions seem to be :

(1.) That, the debts being credited as if paid by both executors, the payments were made with assets jointly held so far as these may go.

(2.) That as to the application of assets charged to the executors severally, inasmuch as both are equally credited with the payment of the debts and held assets at the time it is presumable that each contributed equally to such payment.

A joint testamentary account filed by the surviving executor after his co-executor's death which would not be evidence to charge the co-executor's estate, because he was not concerned in filing it, may nevertheless be used against the administrator of the co-executor, if he is, for his own purposes, compelled to resort to it.

In general, if a party read a portion of a writing or conversation in evidence he gives credit to the whole and affords an opportunity to his adversary to use any other portions that may suit his purpose.

BILL IN EQUITY FOR CONTRIBUTION.—This was a bill filed by the complainant who sought to be reimbursed from the estate of Wrexham McIlvaine deceased, for a portion of the amount of a judgment recovered against and paid by the estate of Samuel W. Chambers deceased, who had been a co-executor with Wrexham McIlvaine of John G. Chambers deceased.

They had passed a joint account, October 1, 1856, which was in evidence, showing a balance due the estate of $1156.65 with interest from September 25, 1856. After this McIlvaine died and after his death, as alleged by the bill, Chambers, on May 12, 1858, passed a second testamentary account of their transactions up to McIlvaine's death ; which account, also in evidence, shewed a balance of $1309.40 with interest from November 5, 1857.. Afterwards Chambers died and October 25, 1858, administration of his estate was granted to the complainant, who on October 6, 1861, passed a third testamentary account shewing a balance of $1032.39 as of November 5, 1858.

The defendants were appointed administrators of Wrexham McIlvaine November 10, 1857, and November 16, 1858, after John G. Chambers' death, Henry C. Cooper was appointed administrator d. b. n. c. t. a. of John G. Chambers. As such Cooper brought his action, on the testamentary bond against the complainant to recover the balance on the third account and other money shewn to be in the hands of the executors of John G. Chambers at the time of Wrexham McIlvaine's death. The probate made by the plaintiff in the action at law against the defendant, who was complainant here, was for the following items, viz :

| | | |
|---|---:|---:|
| Balance on second testamentary account | $1.309 | 40 |
| Interest from Nov. 5, 1857, to Oct. 11, 1859 | 151 | 89 |
| Proceeds of a Woodleave sold from 151-8 acres, | 209 | 85 |
| Interest from Oct. 18, 1855, to Oct. 11, 1859, | 50 | 12 |
| Sundry amounts collected by Chambers, and not passed in testamentary accounts | 150 | 84 |
| Interest from August 11,1858, to October 11, 1859, | 10 | 56 |
| | $1,882 | 66 |

Judgment was recovered October 26, 1861 for $1,656.-15 which the complainant had paid and claimed to be

entitled to be reimbursed, out of Wrexham McIlvaine's estate, one half the amount thereof. The prayer of the bill was for general relief only.

The principal facts stated were either confessed by the answer or established by documentary evidence admitted as proved. All three accounts were filed as exhibits, proof thereof being waived, but nothing was admitted as to the second and third accounts except what appeared upon them when proved as exhibits. The payment of the judgment was proved by a receipt in evidence, and, by agreement of counsel, it was admitted that the probate was for the subject matter of the judgment.

The liability for contribution was denied upon the ground, taken in the answer, that all the assets were collected and disbursed by Chambers, or if any were collected by McIlvaine he paid them over to Chambers or deposited them to his credit. The defendants also alleged in their answer that in Chambers' lifetime they, both together and separately, often called on him and inquired if McIlvaine's estate was liable in any amount to Jno. G. Chambers as surviving executor and that Chambers always stated that McIlvaine's estate was liable for nothing. On this point however there was no proof, nor indeed was any evidence introduced except the three accounts, the judgment, the probate and the receipt for the amount of the judgment and the agreement of counsel before referred to.

On May 13, 1867 the cause was submitted, without argument, upon the pleadings and proofs as here stated.

*Comegys*, for the complainant.

*Ridgely* and *E. Saulsbury*, for the defendants.

THE CHANCELLOR.—

This is a bill for contribution filed by the administrator of Samuel W. Chambers deceased, who was one of the

5—DEL. CH. IV.

executors of John G. Chambers deceased, against the administrators of his co-executors Wrexham McIlvaine also deceased. The two executors while living, October 1, 1856, passed a joint testamentary account, upon which there was an unappropriated balance, of $1156.65. After McIlvaine's death, Chambers as surviving executor passed a second testamentary account purporting to exhibit the joint administration up to McIlvaine's death November 7, 1857, on which second account there was an unappropriated balance of $1309.40. Samuel W. Chambers then died, and the complainant as his administrator passed a third testamentary account of the estate of John G. Chambers November 5, 1858, showing an unappropriated balance of $1032.39. After this Henry C. Cooper as administrator d. b. n. c. t. a. of John G. Chambers recovered against Samuel W. Chambers' administrator, a judgment for $1656.15 as the whole amount of unappropriated assets of John W. Chambers' estate. This judgment Samuel W. Chambers' administrator has paid, and, by his bill, claims contribution in one-half the amount of it from McIlvaine's estate.

There can be no doubt that the judgment recovered against Samuel W. Chambers' administrator was for the unappropriated balance of the personal estate of John G. Chambers remaining unadministered by his executors, Chambers and McIlvaine. It could not be otherwise from the nature of the action, it being a suit by an administrator d. b. n. against a predecessor in the administration, brought upon the testamentary bond. It is moreover specifically shewn by the probate upon which the judgment was recovered.

The attention of the Court was called by the defendants' counsel to a discrepancy between the probate and the judgment, the judgment being for $226.51 less than the probate, also to the fact that the probate was made some two years before the judgment. This discrepancy

of amount, even if it were wholly inexplicable, could not affect the character of the judgment ; but it may probably be explained by the fact that the probate was made in the interval between the passing of the second testamentary account by Chambers and of the third account by the complainant.

The probate therefore stated the unappropriated balance appearing on the second account which was $1309 with interest from Nov. 5, 1857. The award of the referees was made after the passing of the third account by which the unappropriated balance was reduced to $1032.-39 with interest from Nov. 5, 1858. The referees ought to have taken, and probably did take into consideration, the balance shewn by the third account. A calculation of the amount due John G. Chambers' estate taking the unappropriated balance by the third account will come within a few dollars of the sum awarded and for which the judgment was rendered.

The recovery of the judgment against Chambers' administrator and its payment by him do not alone entitle his administrator to contribution from the estate of Mc-Ilvaine. McIlvane's estate is chargeable in this suit only for such part of the assets as he had collected in his lifetime and held unadministered at his decease ; and whether McIlvaine had collected any and what part of the assets, it is incumbent on the complainant to shew, in order to his recovery in this cause.

No testimony has been taken on either side to shew by which of the executors of John G. Chambers the assets were in fact collected, whether by one alone or by both and if by both how much by each. Both the executors are dead and no evidence remains of their transactions except what appears upon the two testamentary accounts, the first passed by both executors October 1, 1856, and the second passed by Chambers May 12, 1858 after McIlvaine's

decease. These are in evidence. By them it is to be determined whether Wrexham McIlvaine at his decease held any part, and, if so, how much, of the unadministered assets of John G. Chambers' estate.

The first of these accounts shews a balance unadministered, at its date, of $1156.65, bearing interest from September 25, 1856. It purports to be, and is by the answer admitted to have been, a joint account, passed by both the executors ; and they are charged as jointly holding the unappropriated balance. *Prima facie* it is evidence that the balance was held jointly. Proof to the contrary would be admissible as between the executors in a suit for contribution. It would be competent for the defendants to shew, notwithstanding the form of the account, that Chambers did, in fact, receive and hold the balance ; but, in the absence of any such proof, the Court is bound to conclude that, at the time of the passing of the first account, one half of the unappropriated balance shewn by it was in the hands of McIlvaine, that is one half of $1156.65 with interest from September 25, 1856.

I have considered at this point the effect of that part of the answer which in substance denies that any part of the assets were ever received, or, if received, that they were held by McIlvaine ; charging that the whole of them were either collected by Chambers, or that, if any part were received by McIlvaine, such part was by him immediately deposited to Chambers' credit. This part of the answer is, I think, responsive to the bill. Though the bill does not in direct terms allege that McIlvaine received a portion of the assets, still it alleges what is equivalent, viz. that the balance of assets, for which the judgment was recovered, was in the hands of both executors ; and indeed without such an allegation either in terms or in effect, the bill would shew no equity. The complainant therefore is not in a position to question the

responsiveness of the answer.   But the answer, although on this point responsive, is not entitled to be received as evidence under the rule.   For the denial of the answer is not made as to matters within the personal knowledge of the defendants.   *Pennington vs. Gittings*, 2 *G. & J.* 272. It is a denial (and could be no more) upon mere *belief and information*, which would not render the defendants liable for perjury: and such a denial is not within the purpose for which a defendant is put to his answer, which is a discovery, or the disclosure of matters supposed to be within his own knowledge.   For these reasons where an answer alleges as facts what the defendant could not personally know, though it may be responsive to the bill, the rule requiring two witnesses, or one witness with corroborating circumstances, or very strong corroborating circumstances, to countervail its effect, does not apply, but such an answer merely puts the complainant to prove the allegations denied.   See 2 *Dan. Ch. Prac.* 842 and the note with cases cited.

Assuming then that Wrexham McIlvaine held one-half the unappropriated balance shewn by the first testamentary account the next inquiry is whether, upon the evidence, this balance was administered in his lifetime or remained in his hands at his decease.

This question is settled by the second testamentary account passed by Chambers after McIlvaine's decease. This purports to be an account of the administration as made by both executors from the date of the first testamentary account up to McIlvaine's decease.   Now, from an examination of the second testamentary account it will appear that, prior to McIlvaine's death, there was applied by the two executors to debts against the estate (not credited to the executors in the first account) the sum of $2,845.09.   There was allowed to the two executors as commissions upon the assets administered before McIlvaine's death $139.14, also for Register's fees $13.80.

These items added to the debts make a sum total of $2,998.93. To this amount then there was clearly, in the interval between the passing of the first account and McIlvaine's death, joint administration of the assets of John G. Chambers' estate. The sum thus administered far exceeds the unappropriated balance jointly held at the date of the first account $156.65 with its interest. If therefore nothing appeared to charge McIlvaine beyond this balance, the second account by shewing a joint administration, during his lifetime, of a larger sum would operate as a full discharge. But while this account does shew that the old balance of $156.65 and its interest, was administered in McIlvaine's lifetime, by the payment of debts, it also charges Wrexham McIlvaine with the receipt of additional assets after the first account was passed. It therefore becomes necessary to ascertain how far these additional assets were also administered in his lifetime, whether at his death any part of them remained in his hands and if any how much. An examination of the account upon this point shows that the assets charged in it as having been jointly received by the executors before McIlvaine's death are (1) the unappropriated balance on the first account which with interest amounted to 1,233.76, (2) the proceeds of the steam saw mill, $2,200.00, with $146.67 for interest. But in the allowance of commissions on the other side of the account there is evidence that only part of this sum was collected before McIlvaine's death, that is $1,452.83. This with its interest amounted to $1,549.68. Only this portion of the proceeds of the steam saw mill can be treated as having been jointly received. That the whole proceeds were charged is explained by the fact that this account was passed May 12th, 1858, six months after McIlvaine's death, and meantime Chambers had collected the balance of these proceeds of sale.

The unappropriated balance on the first account with its interest, and that portion of the proceeds of the steam

saw mill collected before McIlvaine's death with its interest, amounted to $2,783.44. This is the whole amount, with respect to which as assets jointly received according to this account, McIlvaine was chargeable. The amount falls short of the debts paid and commissions and fees allowed, ($2,998.93). The result is that all the assets jointly held by the executors were administered, and with respect to these McIlvaine's estate cannot be chargeable.

But the second account, in addition to the assets jointly received, charges McIlvaine alone as having collected before and up to September 5, 1857, certain small credits of the estate amounting in the whole, with interest, to $203.85. For so much of this as shall not appear to have been administered in his lifetime his estate would be liable. Then does this sum, or any part of it, appear to have been administered? Of the debts paid and commissions and fees allowed to both executors, ($2,998.93), there remain after applying the assets charged as jointly received, a balance of $315.49.

Out of what assets then must we consider that this balance of the debts ($215.49) was paid? Let it be observed here, that all the payments are credited as if made by both executors and that in addition to the assets which they are charged to have held jointly, and which were short of the debts and allowances, by $215.49, both executors are charged with assets as received by them severally; McIlvaine with $203.85 as before stated, and Chambers with sums amounting to $561.30, being the amount of three debts due to John G. Chambers estate, one from himself and two from other persons which he assumed. These charges are made as of November 5, 1857, the day on which the last debt amounting to $747.17 was paid. On the face of the account it does not appear which of the executors, after the joint assets were exhausted, paid the remaining balance of the debts.

Now, assuming, as we have done, that the assets jointly held were first applied to the debts, leaving a balance of $215.49, this balance must of course have been paid out of the assets charged to the executors severally, one or both. And as the debts are credited as if paid by them jointly, · each holding assets at the time, it seems the natural and reasonable presumption that, each contributed equally out of the assets held by him.   Upon this presumption we should credit McIlvaine with one half the balance, that is, with $107.75 as paid out of the assets charged to him severally.   This would leave in his hands, of these assets, unaccounted for, $96.10 bearing interest from November 5, 1857.   I must treat this sum as forming part of the unappropriated balance of the second account, of which balance Chambers in his lifetime applied a portion to the debts credited in the third account, the one passed by his administrator and the residue was recovered from his administrator by the administrator d. b. n. c. t. a. of John G. Chambers, the original decedent.   Chambers' administrator, therefore, is entitled to be reimbursed out of McIlvaine's estate the sum of $96.10 with interest from November 5, 1857.

If this sum be added to the several items of assets, which, upon this account, as we have been dealing with· it, will appear to have been held unapplied by Chambers, the sum of the whole will be the unappropriated balance of this, the second account, ($1,309.30).   Thus the assets received by Chambers separately in McIlvaine's lifetime, being his own debt to the estate and the two debts assumed by him charged as of November 5, 1857 with the interest, amount to $561.30, deduct from this $107.74, the sum we have considered as administered out of the assets held by each executor severally and there remains $453.56.   Add to this the portion of the proceeds of the mill received by Chambers after McIlvaine's death, less the commissions upon it.—*i. e.* $796.99 less $37.35 (making $759.64 to be added) and we have $1,213.20.   To this add

the unapplied balance in McIlvaine's hands at his death ($96.10) and it makes $1,309.30, which is the unappropriated balance of the second account. It is stated on the account, to be $1,309.40, but there is an error of ten cents apparent on the face of the account It occurs in the addition of the assets on the charging side of the account.

I desire to be understood as not undertaking to decide out of what assets *in point of fact* the debts of John G. Chambers were paid, or in other words, which of the assets charged in the second account were actually administered, and which of them remained to form the unappropriated balance of that account. On these points there is no evidence except the account, and that does not show specifically how the several items of the assets charged were disposed of. In such case a conclusion can be reached only by applying what are the most natural and reasonable presumptions with respect to the order of application as between different classes of assets. These presumptions seem to be,

(1.) That the debts being credited as if paid by both executors, the payments were made with assets jointly held, so far as these may go.

(2.) That, as to the application of assets charged to the executors severally, inasmuch as both are equally credited with the payment of the debts and held assets at the time, it is presumable each contributed equally to such payment.

It is upon these presumptions, in the total absence of direct proof, that I have felt obliged to deal with the second testamentary account.

It remains now only to advert to the reason why the Court has treated McIlvaine as if bound for the assets charged to him in the second testamentary account. It is an account filed by Chambers alone as the surviving execu-

tor, to which neither McIlvaine nor his administrator were parties. It *could not, therefore, have been introduced* by the complainant to charge McIlvaine's estate ; and if the defendants were not obliged, in their own defence, to introduce this account the complainant could not have resorted to it as evidence. But McIlvaine being charged in his lifetime as jointly holding the unappropriated balance, on the first account, the account passed after his death by Chambers becomes material to the defence of McIlvaine's estate by shewing that the unappropriated balance of the first account was administered in his lifetime.

To show this in defense it is evidence as an admission on the part of Chambers. But the use of it as an admission to this extent against Chambers makes it evidence also in his favor for all that appears upon it. It is a rule that, "in general, if a party read a portion of a writing or conversation in evidence, he gives credit to the whole and affords an opportunity to his adversary to use any other portions that may suit his purpose." *Gres. Eq. Ev.* 357. It was so held by Lord Hardwicke in *Carter vs. Lord Coleraine* cited by Gresley, and in *Blount vs. Barrow*, cited in 4 *Bro. C. C.* (75.) There has been much controversy as to how far a defendant might read as evidence his own answer in the cause in order to qualify admissions in it which are used by the complainant; but no question has been made, so far as I can find, that a party introducing, for proof to one purpose, a collateral instrument, such as an account, or letter, makes the whole of it evidence. This is true even as to an answer in Chancery made in another cause than that in which it is introduced. In such case the whole answer becomes admissible. *Gres. Eq. Ev.* 324; *Gilb. on Ev.* 51 ; *Boardman vs. Jackson,* 2 *Ball & Beatty*, 386, cited in Gresley, 359. The weight to be given to that part of the account favorable to the party who made it, may be very small. What is in his favor may be rejected and his admission alone credited. Still, the whole instru-

ment is in evidence and the Court is at liberty to consider and weigh it for what it is worth.

In the present case I have thought that a just conclusion would be most likely to be attained by giving credit to all that appears upon the second testamentary account, and making a settlement between the parties accordingly.

Let a decree be entered for the complainant for $96.10 with interest from November 5, 1857.